IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00052-MSK-MJW

CHRIS ROBINETTE,

       Plaintiff,

v.

ASPEN SKIING COMPANY, L.L.C.,

       Defendant.
_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to Defendant Aspen Skiing Co. LLC's ("Aspen") Motion for Summary Judgment **(# 33)**, Mr. Robinette's response **(# 37)**, and Aspen's reply **(# 39)**.

## FACTS

Although the parties have disputes as to a number of facts relevant to this action, the critical facts necessary for resolution of this motion are essentially undisputed. On February 24, 2006, Mr. Robinette was snowboarding at Snowmass Ski Resort, a property owned and operated by Aspen. He approached a small incline on the trail, intending to perform a jump. Unbeknownst to Mr. Robinette, an Aspen employee, Eric Hill, was driving a snowmobile uphill on the other side of the incline. Mr. Robinette and Mr. Hill collided. Mr. Robinette sustained serious injuries as a result. Mr. Robinette then commenced this action, asserting a single claim sounding in negligence against Aspen.

Aspen moves for summary judgment **(# 33)**, arguing that Mr. Robinette's claim is within the terms of a pre-accident exculpatory release that he signed when he purchased a season ski pass from Aspen.  In the alternative, Aspen seeks a ruling that Mr. Robinette was "presumptively negligent" by failing to comply with portions of the Colorado Ski Safety Act, C.R.S. § 33-44-109(2), (4).

Mr. Robinette responds **(# 36)**, arguing: (i) that C.R.S. § 33-14-116 creates a public duty for operators of snowmobiles to behave in a safe manner and that such duties cannot be waived by means of a private release agreement; and (ii) that the terms of the release signed by Mr. Robinette are ambiguous and do not clearly address the type of accident presented in this case.  Mr. Robinette also opposes Aspen's alternative request for a finding that he was negligent, arguing that no presumption of negligence arises under the Ski Safety Act where Aspen was in breach of the public duty created by C.R.S. § 33-14-116.

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual

dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

### B. Exculpatory release

Although disfavored, an exculpatory release insulating a party from its own ordinary negligence is enforceable under Colorado law in certain circumstances. *Chadwick v. Colt Ross Outfitters, Inc.*, 100 P.3d 465, 467 (Colo. 2004). Whether a release is valid and applicable is a question of law for determination by the Court. *B&B Livery, Inc. v. Riehl*, 960 P.2d 134, 136 (Colo. 1998).

To be effective, the release must meet four criteria: (i) there must not have been an obvious disparity in bargaining power between the releasor and releasee; (ii) the agreement must

set forth the parties' intentions in clear and unambiguous language; (iii) the circumstances and the nature of the service must indicate that the agreement was fairly entered into; and (iv) the agreement may not violate public policy. *Chadwick*, 100 P.3d at 467; *see also Jones v. Dressel*, 623 P.2d 370, 376 (Colo. 1981) (reciting slightly different elements). Aspen concedes that it bears the burden of proving each of these elements.

Aspen has come forward with evidence sufficient to establish the first and third elements, and Mr. Robinette does not challenge Aspen's ability to prove these elements. Therefore the Court finds that Aspen has carried its burden with regard to the first and third elements. The Court's analysis thus focuses on whether the agreement is clear and unambiguous in its terms and whether it violates public policy.

Turning first to the clarity of the release language, the operative portion of the release reads as follows:

> In consideration of the issuance of a season's pass to me, I agree to waive, release, indemnify, defend, and hold harmless [Aspen] and their officers and employees from and against any and all claims of any sort whatsoever arising out of or related to my use of the facilities, ski area and lifts at Snowmass . . . I hereby assume all risks of skiing/riding.

In many ways, this language is similar to that found by the Colorado Supreme Court in *Chadwick* to be a clear and unambiguous release. There, the plaintiff agreed to release a trip outfitter from "any legal liability. . . caused by or resulting from" his participation in the trip. 100 P.3d at 468. The Court brushed aside an argument that the release was ambiguous because it did not expressly mention the outfitter's "negligence," finding that the release's language "cannot reasonably be understood as expressing anything other than an intent" to fully release all types of claims, including claims for negligence. *Id.* A similar conclusion is warranted here.

The release signed by Mr. Robinette extends to "any and all claims of any sort," so long as those claims "aris[e] out of or relat[e] to" his use of Aspen's facilities. It is undisputed that the accident in question occurred in the course of Mr. Robinette using Aspen's facilities.

Mr. Robinette argues that the release language is ambiguous because it does not specifically address the risk of being hit by a snowmobile. However, the specific risk of colliding with a snowmobile being operated by a ski resort employee is necessarily within the "risks of skiing/riding." Indeed, C.R.S. § 33-44-108(3) (part of the Ski Safety Act) contains visibility-related requirements for "[a]ll snowmobiles operated on the ski slopes or trails of a ski area."[1] Given that the legislature has seen fit to specifically enact safety measures to prevent skier-snowmobile collisions, one can hardly argue that such a collision somehow falls outside of Mr. Robinette's express assumption of "all risks of skiing."

In support of his contention that the release language must specifically address the risk of collision with snowmobiles in order to be effective here, Mr. Robinette relies upon *Potter v. National Handicapped Sports*, 849 F.Supp. 1407, 1410 (D. Colo. 1994). In *Potter*, the plaintiff was a ski racer, injured in a collision with a race volunteer who was standing near the finish line. In rejecting the defendant's reliance on a release encompassing "all claims . . . that result[] in any way from my participation," in the race, the court noted that language in that release made express reference to risks relating to "bumps, ruts, moguls, stumps, forest growth and debris . . . rocks, trees, snowmaking pipes, life towers, and other hazards [which are] almost always adjacent to such courses." *Id.* at 1410. The court concluded that "all of the express on-course

---

[1] The Court notes that neither party has cited C.R.S. § 33-44-108(3), nor offered any evidence as to whether the snowmobile operated by Mr. Hill was or was not in compliance with that statutory provision.

hazards listed are those which occur 'naturally,'" whereas the actual cause of the plaintiff's injury was the carelessness of an individual volunteer. *Id.*

*Potter* is not persuasive in the context of the facts of this case. Here, the release lacks any recitation of specific examples of hazards to which it was intended to apply. The court in *Potter* apparently[2] concluded that the release's reach was limited to risks that were similar in nature to those specifically enumerated. Using the same reasoning, the release at issue in this case is not limited because it identifies no specific risks or hazards. Accordingly, the Court finds that the language of the release clearly and unambiguously encompasses the risk of an on-trail collision with a resort-operated snowmobile.

Mr. Robinette also contends that the release is invalid because it conflicts with public policy. He argues that enforcement of the release is inconsistent with C.R.S. § 33-14-116 which is part of Colorado's statutory scheme for licensing and regulating the operation of snowmobiles. C.R.S. § 33-44-116(1) provides that "No person shall operate a snowmobile in a careless or imprudent manner." A conviction for violation of that provision constitutes a "class 2 petty offense" under state law, resulting in a fine of up to $ 100. C.R.S. § 33-14-116(5). Mr. Robinette contends that no exculpatory release can save a person from an obligation to comply with state law. In support of this argument, Mr. Robinette points to *Phillips v. Monarch Recreational Corp.*, 668 P.2d 982, 987 (Colo. App. 1983) and *Peterman v. State Farm Mut. Auto Ins. Co.*, 961 P.2d 487, 492 (Colo. 1998).

---

[2]This Court finds *Potter*'s conclusion unpersuasive for the additional reason that its analysis of the release language in question was somewhat superficial. Likely, this is because the summary judgment granted in *Potter* was premised on a second, more comprehensive release given by the plaintiff. Thus, the court's analysis of the first release was mere *dicta*.

In *Phillips*, the plaintiff skier was injured when he collided with a piece of trail grooming equipment on a run. A jury trial found the ski resort negligent and awarded damages. The ski resort sought a new trial, arguing that the trial court erred in excluding evidence of the language on the back of the skier's lift ticket that required him to assume the risks attendant to skiing. The appeals court held that no new trial was warranted. "The [Ski Safety Act] allocate[s] the parties' respective duties," the court explained, "and the trial court correctly excluded a purported agreement intended to alter those duties." 668 P.2d at 987. Mr. Robinette here places special reliance on *Phillips'* comment that "Statutory provisions may not be modified by private agreement if doing so would violate the public policy expressed in the statute." *Id.*

In *Peterman*, the Colorado Supreme Court determined that a provision in an auto insurance policy that required the insured to obtain the insurer's consent to any judicial determination of the liability of an uninsured driver (or else participate in a separate arbitration proceeding with the insurance company) was invalid. The Court reasoned that the required consent provision was contrary to a statutory requirement that uninsured motorist coverage in a policy provide the same protection to an insured as the policy does for injuries caused by insured drivers. Because the required consent provision imposed an extra burden on the insured if an injury was caused by an uninsured driver, it was void as against public policy. 961 P.2d at 492. Mr. Robinette seizes on a particular line from *Peterman*: "Parties may not privately contract to abrogate statutory requirements or contravene the public policy of this state." *Id.*

The selected quotations from *Phillips* and *Peterman* are instructive, but not in the way that Mr. Robinette argues. Each quotation addresses the situation where a contractual provision is inconsistent with and prevents fulfillment of public policy as articulated by statute. Each case

presents a scenario in which enforcement of the contractual provision would be contrary to or prevent the enforcement of a statute.

That is not the situation presented here. In this case, the contractual release is directed to civil tort liability for injuries caused by a variety of events – among other things, from the allegedly unsafe operation of the snowmobile. The release affects Mr. Robinette's private right to sue and recover an award of damages. In contrast, C.R.S. § 33-14-116 creates public rights enforced by state officials through imposition of criminal penalties for the unsafe operation of snowmobiles. The release and the statute are not inconsistent in their express provisions, purposes, or in practical implementation. The statute does not address civil tort liability; the release does not address criminal accountability. Enforcement of the release of Aspen from civil tort liability does not impair the enforcement of the criminal statute. Put differently, even if Mr. Robinette's waiver prevents him from recovering damages from Aspen, *the state of Colorado* can still implement its public policy under C.R.S. §33-14-116 by prosecuting and punishing any person or persons who carelessly or imprudently operated the snowmobile. Because the release and the statute are not inconsistent, enforcement of the release does not undermine public policy as expressed in C.R.S. § 33-14-116.

Accordingly, the Court finds that Aspen has carried its burden of establishing all of the elements necessary to permit enforcement of the release as a matter of law. Aspen is thus entitled to summary judgment on Mr. Robinette's claim.[3]

---

[3] The Court has considered and rejects Mr. Robinette's remaining arguments. The fact that Aspen's internal communications with its employees refers to their "liability" for accidents is irrelevant to the analysis herein.

## CONCLUSION

For the foregoing reasons, Aspen's Motion for Summary Judgment **(# 33)** is **GRANTED**.

Judgment in favor of Aspen shall enter contemporaneously with this Order.

Dated this 23rd day of April, 2009

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge